# Brian L. Bromberg, P.C.

Attorney at Law  
Licensed in New York State

40 Exchange Place, Suite 2010  
New York, NY 10005  
Phone: (212) 248-7906  
Fax:    (212) 248-7908

February 14, 2005

<u>By Hand & ECF</u>  
Honorable Robert M. Levy, U.S.M.J.  
U.S. District Court, Eastern District of New York  
225 Cadman Plaza East  
Brooklyn NY 11201-1818

Re:   <u>Miller v. Wolpoff & Abramson, L.L.P., EDNY, No. CV-01-1126 (RJD)(RML)</u>

Dear Judge Levy:

Plaintiff respectfully requests that the Court direct Defendant Upton, Cohen & Slamowitz to turn over its entire "PAPERLESS FILE" and "computerized file pages" in an unredacted format[1] or conclusively identify and produce all documents or materials which were reviewed before sending the collection letter and filing the lawsuit at issue.[2] In addition, unless UC&S is willing to stipulate not to produce UC&S partner David Cohen as a witness or affiant, Plaintiff requests permission to depose Mr. Cohen after receiving copies of the documents that were reviewed.

## UC&S's Redacted Materials

UC&S's "PAPERLESS FILE" and "computerized file pages" concerning Plaintiff Arthur Miller should be turned over because between the initial videotape deposition of Mitchell Slamowitz, Esq. taken on January 12, 2004, and his re-deposition on January 18, 2005, Mr. Slamowitz's memory evaporated. In his 2004 deposition, Mr. Slamowitz testified that he only relied upon the unredacted portions of the documents and Plaintiff's credit report in deciding to send an initial collection letter and then to sue. This testimony squared with Mr. Slamowitz's Affidavit submitted in support of summary judgment and with written representations made by UC&S's attorneys, Wilson, Elser. But in his 2005 deposition, Mr. Slamowitz could not recall what documents he relied upon, leaving open whether the redacted portions of the documents were relied upon or whether some as yet undisclosed documents or materials were used.

This is *the central issue of the case*. It has been asked in numerous permutations in the initial discovery demands, in numerous permutations in the deposition, and in numerous permutations of the countless 37.2 conferences with opposing counsel. It boils down to one thing: identify and produce *all* the documents or materials UC&S's attorneys reviewed before sending the letter and filing the suit at issue.

1

This should be simple, but Defendant has obstructed the production of this material at every avenue. And just when Plaintiff believed all the material had been produced, Mr. Slamowitz changed his testimony.

Suddenly, Mr. Slamowitz has no recollection of what materials where used to review Plaintiff's collection account. The only way to ascertain with any certainty what materials Mr. Slamowitz reviewed before sending its initial collection letter and then commencing suit is to review UC&S's unredacted records or receive a stipulation from Defendant's counsel as to the identity of those documents. Again, not only does Mr. Slamowitz's 2005 testimony fail to match up with his 2004 testimony but he directly contradicts his own attorneys' written representations made in response to Your Honor's court order.

The relevant facts are as follows:

A) On May 13, 2003, Plaintiff served written discovery requests (*i.e.*, Interrogatories and Document Production Requests) asking for, among other things, all documents reviewed by UC&S before sending its initial collection letter and before commencing suit.[3]

B) In response, UC&S produced a redacted version of what it refers to as its "PAPERLESS FILE."[4]

C) On September 18, 2003, in response to Plaintiff's motion to compel and after a lengthy discovery conference, Your Honor issued an Order that provided in relevant part as follows:

> Re: interrogatories 2 and 3, defendant shall review its files and advise plaintiff by 9/25/03 whether there are additional documents that defendant considered prior to initiating collection proceedings, and shall either produce the documents or provide a privilege log by that date.[5]

D) On September 25, 2003, UC&S's counsel, Wilson, Elser, Edelman & Dicker LLP, sent a facsimile to my office, that provided in relevant part as follows:

> In accordance with Judge Levy's Order, dated September 18, 2003, enclosed herewith is a supplemental production responsive to Interrogatory Nos. 2 and 3. The enclosed document was in UC&S's possession on July 18, 2000, but was inadvertently omitted from our earlier production. Portions of the computerized file page have been redacted as work product. As with the paperless file previously produced, the redacted portions reflect comments and mental impressions prepared in anticipation of litigation. None of the redacted portions constitute "documents

       that defendant considered prior to initiating collection proceedings" as specified in the Order.[6]

E) Mitchell Slamowitz was the only witness disclosed by UC&S. To quote UC&S's First Amended Disclosure Pursuant to Rule 26(a)(1), "Mitchell Slamowitz was the attorney who made all legal decisions with regard to plaintiff's file."[7]

F) Mitchell Slamowitz was also identified in interrogatory responses as the only person at UC&S "involved in reviewing or drafting the form of letters and summons and complaint sent or served in conjunction with the collection of Plaintiff's alleged debts, including without limitation the letters and summons and complaint attached as Exhibits A, B, C, D and E to the Complaint."[8]

G) During his original January 12, 2004 deposition, Mr. Slamowitz admitted (1) that he was the only one who reviewed the Miller account, (2) that the only information he reviewed before UC&S sent the initial collection letter was the information set forth on the unredacted portions of the "PAPERLESS FILE" and the "computerized file page."[9]

H) During his 2004 deposition, Mr. Slamowitz admitted that after the initial collection letter, but before filing a complaint, UC&S would (1) try to reach the consumer, and (2) if within 35 days of sending the initial collection letter there are no changes to the account, the summons is prepared, verified, and served.

I) During his 2004 deposition, Mr. Slamowitz admitted that the only additional information reviewed after sending the initial collection letter but before commencing suit was a credit report. (This credit report was automatically pulled by the UC&S computer.)

J) During his 2004 deposition, Mr. Slamowitz admitted that he relied entirely upon Lord & Taylor's representations that the alleged debt was due.

K) Mr. Slamowitz's 2004 deposition testimony was in accord with the May 22, 2001 Affidavit of Mitchell Slamowitz in Support of Defendant Upton, Cohen & Slamowitz's Motion to Dismiss and/or for Summary Judgment."[10]

L) On January 18, 2005, Plaintiff re-deposed Mr. Slamowitz. (Because of a technical malfunction, Mr. Slamowitz's original videotape deposition did not record. This situation was described to Your Honor in correspondence sent in November 2004.) During the 2005 deposition, Mr. Slamowitz admitted to reviewing only the unredacted portions of the redacted "PAPERLESS FILE" and the "computerized file page" but could no longer recall whether these were the only documents he reviewed before sending the initial collection letter and then verifying, serving, and filing the Civil Court Complaint against Plaintiff.[11] This testimony is intentionally ambiguous preventing discovery from closing on this

3

issue and preventing Plaintiff from moving for summary judgment on a clear record.

Thus, without reviewing UC&S's unredacted "PAPERLESS FILE" and "computerized file page[s]," Plaintiff has no conclusive way of determining what documents and materials Mr. Slamowitz reviewed before (a) sending the initial collection letter, and (b) commencing suit except for an identification and production of the full set of such documents and materials or a stipulation as to those documents and materials from opposing counsel.

### Deposing David Cohen

Before January 18, 2005, UC&S's only witness was Mitchell Slamowitz: "Mitchell Slamowitz was the attorney who made all legal decisions with regard to plaintiff's file."[12] The name of Mr. Slamowitz's partner, David Cohen, did not come up even once during the 2004 deposition. But all that changed when Plaintiff re-deposed Mr. Slamowitz in 2005. Mr. Slamowitz testifies repeatedly that Mr. Cohen reviewed documents, performed due diligence, and set up the UC&S computer system in such a manner that it complies with the law.[13] In other words, by sprinkling Mr. Cohen's name liberally throughout the deposition transcript, UC&S has set itself up to bring Mr. Cohen in as a surprise witness and affiant. It is respectfully requested that if UC&S is unwilling to stipulate not to introduce David Cohen as a witness or affiant, that Plaintiff be allowed to depose him based upon Mr. Slamowitz "new" testimony.

Respectfully,

*[signature]*

Brian L. Bromberg
BB:ril.
Encs.
cc:     Thomas A. Leghorn, Esq. (By Fax & ECF)
        Mark K. Anesh, Esq. (By Fax & ECF)
        Lance A. Raphael, Esq. (By Fax & ECF)
        Christopher V. Langone, Esq. (By Fax & ECF)

---

[1]     Copies of these documents are attached as Exhibit A and Exhibit B, respectively.

[2]     According to Slamowitz's 2005 testimony, "all documents" appears to equate with the "PAPERLESS FILE" and "computerized file pages." But according to his earlier 2004 testimony "all documents" consisted of nothing other than the *unredacted* portions of the "PAPERLESS FILE" and "computerized file pages."

[3]     The relevant Interrogatories read as follows:

    2.      Identify all documents related to Plaintiff's alleged debts which were in each of the Defendants' physical possession when each of the letters bearing a letterhead of W&A or

4

UC&S (including without limitation the letters attached as <u>Exhibits A, B, C, and D</u> to the Complaint) were transmitted to the Plaintiff about the Plaintiff's alleged debts. In so doing, specify the date the document was received, the nature of the document, when and by whom the document was reviewed, and the letter(s) to which the document relates.

   3.  Identify all documents related to Plaintiff's alleged debts which were in each of the Defendants' physical possession when the summons and complaint in the case entitled *The May National Bank of Ohio d/b/a Lord & Taylor v. Arthur Miller*, Civil Court of the City of New York, County of Queens, Index No. 62272/2000 (attached as <u>Exhibit E</u> to the Complaint), was verified by Mitchell G. Slamowitz, Esq. In so doing, specify the date the document was received, the nature of the document, and when and by whom the document was reviewed.

A copy of Plaintiff's First Set of Written Discovery Requests (Interrogatories; Document Production Requests) to Defendants is attached as <u>Exhibit C</u>.

[4] A copy of UC&S's so-called "PAPERLESS FILE" is attached as <u>Exhibit B</u>.

[5] A photocopy of Your Honor's Minute Entry is attached as <u>Exhibit D</u>.

[6] A copy of Wilson, Elser's September 25, 2003 letter is attached as <u>Exhibit E</u>.

[7] A copy of UC&S's First Amended Disclosure Pursuant to Rule 26(a)(1) is attached as <u>Exhibit F</u>.

[8] UC&S's response to this interrogatory was as follows: "Mitchell Slamowitz, Esq. was responsible for the letter sent to Mr. Miller on or about July 18, 2000 letter and also the complaint filed against Mr. Miller." Copies of UC&S's discovery responses are attached as <u>Exhibit G and H</u>.

[9] Copies of which are attached as <u>Exhibits A and B</u>.

[10] Mr. Slamowitz's affidavit (a copy of which is attached as <u>Exhibit I</u>) has been summarized by the Second Circuit as follows:

> In addition, the affidavit submitted by UC & S partner Mitchell Slamowitz describing the steps taken by UC & S before its July 18, 2000 letter was sent merely stated that he reviewed the file sent by W & A through NAN software, which included "Mr. Miller's full name, social security number, current address, telephone number, the Lord & Taylor account number, the amount of the debt, and a notation that Mr. Miller was an attorney.... After reviewing the file, I made the decision to send a letter to Mr. Miller and I personally signed the letter, dated July 18, 2000." This too is insufficient to support the conclusion as a matter of law that any professional judgment was exercised before UC & S sent its collection letter... Similarly, while Slamowitz stated that "[a]t the time of this initial review of Mr. Miller's file, I also determined that a summons and complaint should be filed if Mr. Miller did not respond to the letter dated July 18, 2000," the affidavit does not demonstrate any basis for this determination.

5

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 305-6 (2d Cir. 2003).

[11]  Here is one relevant section of the 2005 deposition transcript:

Raphael:  All right, going back to what I was asking you before. About how much time did you spend reviewing letters and complaints back in the time period of 2000?

Slamowitz:  I can't recall, sir.

Raphael:  Can you tell me what your general review of an account consisted of?

Slamowitz:  Back at this time?

Raphael:  Yes.

Slamowitz:  I would pull the file, obviously. I would look and see to make sure that all the information on there, on its face, looked like it formed a bona fide claim. Check the name, address. Obviously balance, social security number, address. Check the court; make sure that the court – the address looked proper. Is this at summons time or at initial time, I'm sorry?

Raphael:  Well I'm going to ask you a question. You said you'd pull up the file – what is – what document would reflect what file you pulled up? Are you referring to page 27?

Slamowitz:  Yes. And –

Raphael:  All right. So you're looking at page 27 [*i.e.*, the "computerized file page" attached as Exhibit B]; that's the file, right?

Slamowitz:  That is the file and then if there are any paperless notes that went with it.

Raphael:  So when you're referring to the paperless notes that go with it, you're referring to what's on page 87 [*i.e.*, the "PAPERLESS FILE" attached as Exhibit A]?

Slamowitz:  Yes, if there are any.

Raphael:  Okay. Now, I just want to show you – look at page 26 [*i.e.*, the letter from Wilson, Elser to Brian Bromberg attached as Exhibit E]. You see that letter?

\*   \*   \*

Slamowitz:  Do you have page 26 in front of you?

Raphael:  Okay, great. Can you tell me what it is?

Slamowitz:  Looks like a letter from Wilson, Elser to Randolph Hubber [*sic*]

Raphael:  Yes, what's the date?

Slamowitz:  September 25, 2003.

6

Raphael: Okay. You see where it says – well, I'm not going to read the whole thing. I'd ask you to read it.

\* \* \*

Slamowitz: Okay, I've read it sir.

Raphael: Okay, see that last sentence on the paragraph – the one where it says none of the redacted portions constitute documents that the defendant considered prior to initiating collection proceedings? See that?

Slamowitz: Yes.

Raphael: Okay. Because before I had asked you about pages 87, 88, and 89 and 90 [*i.e.*, the "PAPERLESS FILE" attached as Exhibit B] which had all those blacked out stuff on it.

Slamowitz: Yes.

Raphael: And you said you couldn't recall whether that stuff might have existed before you sent out the collection letter?

Slamowitz: Right.

Raphael: After reading this letter form your lawyer, did that refresh your recollection that the only things that you reviewed prior to sending out a collection letter were the unredacted portions of that page and page 27 [*i.e.*, the "computerized file page" attached as Exhibit B]?

Slamowitz: No.

\* \* \*

Raphael: Do you have any reason to believe that you reviewed anything other than the documents that that letter reflects? Before sending out the collection letter?

Slamowitz: I can't recall.

\* \* \*

Raphael: Okay, let me – let me rephrase it then. I know that you can't recall what you reviewed before you sent out the collection letter. We're clear on that, right?

Slamowitz: Okay.

Raphael: Okay. What I'm asking you now is, is there any reason to believe that there was anything else that you would have reviewed but these two documents?

Anesh: Objection, asked and answered.

Slamowitz: I can't recall, sir.

7

Raphael:    I'm not asking you to recall, I'm asking you right now as you sit here today is there anything that you can think of that you would ordinarily have reviewed that you don't see in front of you.

Anesh:   Asked and answered.

Slamowitz:    I can't think of anything.

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as <u>Exhibit J</u>, at 194:1 – 199:3.

[12]    A copy of UC&S's First Amended Disclosure Pursuant to Rule 26(a)(1) is attached as <u>Exhibit F</u>.

[13]    Here are examples of Mr. Slamowtiz's testimony regarding Mr. Cohen:

Example No. 1:

Raphael:    Twenty-two percent, okay. All right. After opening the file, what was the first thing you did?

\*   \*   \*

Slamowitz:    I don't open the files.

Raphael:    Who does?

Slamowitz:    The files are imported in through the IT Department. A staff that's trained, and procedures, which are set up by the attorneys in the office, my partner, David Cohen –

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as <u>Exhibit J</u>, at 84:18 – 85:8.

Example No. 2:

Raphael:    You know if the credit card agreement allowed for interest to be charged?

Slamowitz:    No.

Anesh:    Note my objection to the form of the question.

Slamowitz:    Mr. Cohen set up the procedures and he would not have set that up unless it allowed it.

Raphael:    Mr. Cohen set up the procedures, not you?

Slamowitz:    Procedures that run the office, no, Mr. Cohen did that.

Raphael:    Aren't you the one who signed the complaint?

Slamowitz:   I am.

Raphael:   But you have no first hand knowledge as to how the procedures setting interest were created?

\* \* \*

Slamowitz:   Mr. Cohen sets up the procedures…

Raphael:   You have no idea how the interest was calculated on this account?

\* \* \*

Slamowitz:   Mr. Cohen sets up the procedures with the IT department. He sets the interest rate – and – for each specific client.

Raphael:   But you have no personal knowledge as to what –

\* \* \*

Slamowitz:   Mr. Cohen does this. We – not everybody does every job function in the office. He sets this up, and I – I rely on his abilities to do so.

Raphael:   Okay, but you have no first-hand knowledge of what the interest rate that was charged on this account is?

\* \* \*

Slamowitz:   I said nine percent. I can't answer what Lord & Taylor charges. I said what we charge.

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as <u>Exhibit J</u>, at 120:13 – 122:17.

Example No. 3:

Raphael:   Do you know if The May Company is a foreign corporation?

Slamowitz:   I believe that they are. You know what –

Raphael:   Do you know –

Slamowitz:   You know what – I'm not 100 percent sure either way, I'm sorry. So I'm not sure at this time.

Raphael:   Did you know back in 2000?

Slamowitz:   I probably did.

Raphael:   And what would you have based that information on?

9

\* \* \*

Slamowitz: That would have been based on the – I would have known that off the summons of complaints [sic] that my partner set up.

Raphael: You mean you would have relied on your own internal documents to determine whether a client was a foreign or a domestic corporation?

\* \* \*

Slamowitz: I would rely on my partner getting the answer to that question before preparing the summons of complaint [sic].

Raphael: But you yourself did no personal investigation? Is that correct?

\* \* \*

Slamowitz: Yes.

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as Exhibit J, at 180:16 – 182:2.

Example No. 4:

Raphael: Mr. Slamowitz, when you talked to Mr. Cohen, in the past, did he – do you have any firsthand knowledge that he personally reviewed the credit card agreement between Mr. Miller and The May Company?

Slamowitz: Yes.

Raphael: So you spoke with him and he told you that he had personally reviewed the credit card agreement between Mr. Miller and The May Company?

\* \* \*

Slamowitz: Yes.

Raphael: When did this conversation take place?

Slamowitz: I can't recall.

Raphael: What year?

Slamowitz: Still can't recall.

Raphael: Where was it?

\* \* \*

10

Slamowitz:   I don't know, sir.

Raphael:   What was the substance of the conversation?

* * *

Slamowitz:   I can't recall the substance.

Raphael:   Well, then how can you tell me that you've had a conversation with him about the contract that existed between Mr. Miller and The May Company if you can't remember any of the substance of the conversation?

Slamowitz:   I am – I am confident that when we set up the client, Mr. Cohen did his due diligence and reviewed all this.

Raphael:   Okay, and – and based upon what information? What facts?

Slamowitz:   I can't recall. I'm sure we talked about it at the time. This was years ago. I can't recall.

Raphael:   So you have no idea.

* * *

Slamowitz:   I just reiterate my other question – my other answer. I'm sure this was discussed at the time that the client was set up.

Raphael:   But you have no independent recollection of having this discussion.

* * *

Slamowitz:   I can't recall having the exact conversation.

Raphael:   And you can't recall actually having gone over the contract for this client? Correct?

Slamowitz:   Yes.

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as Exhibit J, at 213:10 – 216:6.

Example No. 5:
Raphael:   Mr. Slamowitz, how do you determine whether the interest is calculated accurately from looking at page – I'm sorry – looking at page 27 [*i.e.*, the "computerized file page" attached as Exhibit B]?

* * *

Slamowitz:   The interest from date and the computer and the set up by Mr. Cohen takes care of the rest.

*See* January 25, 2005 Mitchell Slamowitz deposition transcript attached as Exhibit J, at 229:7 – 229:18.

11