# · WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, New York 10017-5639  Tel: (212) 490-3000  Fax: (212) 490-3038

*New York• Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago*
*White Plains, NY • Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • London*
*Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich*

———

www.wemed.com

RECEIVED
In Chambers of:
U.S Magistrate Judge
2/00~~ ~~~

November 15, 2004     NOV 1 8 2004

**VIA OVERNIGHT MAIL**

Honorable Robert M. Levy
U.S. District Court, Eastern District of New York
225 Cadman Plaza East, Room 619
Brooklyn, NY 11201-1818

Re:   *Miller v. Wolpoff & Abramson, L.L.P., et al.*;
      Case No.      :    CV-01-1126
      Our File No.  :    00295.12234

Dear Judge Levy:

This will respond to plaintiff's letter, dated November 10, 2004, moving to compel certain discovery production from defendant Wolpoff & Abramson, LLP. As set forth in detail herein, there are numerous grounds for the denial of this motion to compel. The documents sought by the plaintiff were either: (a) requested for the first time in the plaintiff's November 10, 2004 letter, well after the February 25, 2004 close of discovery; (b) documents which are indicative of fishing expedition discovery; or (c) documents within the province of the attorney-client communication and/or attorney work product doctrine and, thus, based upon prior rulings of this Court not subject to production. Moreover, the only issue left open on this case is whether the defendant attorneys conducted a "meaningful review" of the plaintiff's file. As the Court will see below, plaintiff's demands go well beyond seeking documents relating to Wolpoff & Abramson's "meaningful review."

Defendant further objects to the entire motion as it relies primarily on transcripts from the depositions of Wolpoff & Abramson witnesses and despite defendant's request for production of the transcripts for review, they have not been produced notwithstanding multiple requests in this regard for depositions conducted 10 months ago. Thus, the defendant has not had an opportunity to review these transcripts.

Defendant responds to each demand in plaintiff's motion to compel individually:

(1)   This demand of Mr. Abramson's 5-phase, 35 step review process is improper as plaintiff never demanded production of these documents prior to the November 10, 2004 letter. Plaintiff's claim that Mr. Abramson read the "process" into the record grossly mischaracterizes the testimony and implies that Mr. Abramson was

Honorable Robert M. Levy
November 15, 2004
Page 2

reading from a document when offering such testimony. This is simply untrue. Mr. Abramson maintained notes compiled by his counsel in preparation of his testimony which were developed pursuant to the attorney-client relationship and attorney work product doctrine and which were occasionally referred to by Mr. Abramson during the deposition.

Mr. Abramson and four of his colleagues were deposed for over 16 hours over the course of 3 days. Mr. Abramson testified in two (2) separate depositions giving extensive testimony on the procedures utilized by W&A to send Mr. Miller a letter. None of Plaintiffs' attorneys showed up at the deposition but instead chose to conduct it by telephone. More importantly, plaintiff never requested these documents, to the extent they exist, at any point prior to the deposition, during the deposition, or after the deposition. The deposition occurred in January, 2004. Discovery has long since closed.

(2)     This demand for documents from W&A's client is improper on several grounds. First, production has not been requested prior to the November 10, 2004 letter. In fact, plaintiff's demand is actually an improper attempt to ask follow-up questions with respect to issues that he had a full opportunity to explore in a deposition that occurred 10 months ago. Second, plaintiff readily admits that these documents are from the <u>May Company</u>, not the defendant, and, thus, are irrelevant to the defendant's meaningful review. More importantly, production of these documents, to the extent that they exist, would invade the province of the attorney-client privilege with the defendant's client, the May Company;

(3)     This demand regarding the list of instructions for handling Mr. Miller's account by May Company to W&A is improper as the "list," to the extent it exists, is proprietary information from the <u>May Company</u>, and, thus, is irrelevant to whether defendant conducted a "meaningful review." Second, production of this document was not made during the deposition or any point after the deposition. More importantly, production of these documents, to the extent that they exist, would invade the province of the attorney-client privilege with the defendant's client, the May Company. Finally, as with the previous demand, plaintiff's demand is an improper attempt to ask follow-up questions with respect to issues that he had a full opportunity to explore in a deposition that occurred 10 months ago;

(4)     This demand for May Company's parameters for handling their accounts is improper on several grounds. First, production had not been requested prior to the November 10, 2004 letter. Second, the "parameters" set by the <u>May Company</u>," are irrelevant in determining the defendant's meaningful review. More importantly, production of these documents, to the extent that they exist, would invade the province of the attorney-client privilege with the defendant's client, the May Company. These documents seek to discover confidential communications between an attorney and his client directly regarding how he is to handle their legal referrals. As with the prior demand, plaintiff's demand is

Honorable Robert M. Levy
November 15, 2004
Page 3

actually an improper attempt to ask follow-up questions with respect to issues that he had a full opportunity to explore in a deposition that occurred 10 months ago;

(5)     Defendants object to this amorphous request regarding class size information as the defendant, pursuant to this Court's prior directive, has already provided plaintiff with copies of the letters sent by the defendant and all information directed by the Court.  The Court's prior ruling necessitated Defendant incurring enormous costs to determine the number of files handled by Mr. Abramson and Mr. Canter on each of the respective days that letters were sent to Mr. Miller.  All of this information has been provided to plaintiff.  Defendant further objects to this vague demand for "class size information" as the plaintiff has undertaken no efforts whatsoever to certify a class.  Defendant supplemented its discovery responses over one (1) year ago in October 2003 and plaintiff conducted 5 extensive depositions of the defendants over the course of 3 days for approximately 16 hours in January 2004.  The depositions clearly established that each file handled by the defendant law firms is handled in a unique manner based upon the facts and circumstances of that matter.

Plaintiff has pointed to nothing from those depositions which would indicate that further discovery from the defendants would amount to anything more than the fishing expedition this case has been from its outset.  The fact that the Court indicated that the plaintiff could renew its application after depositions clearly did not mean that all the plaintiff had to do was first conduct a deposition but, rather, that if the deposition revealed that there was some basis established to support further discovery then the plaintiff could proceed.   As noted above, the depositions of the Wolpoff & Abramson defendants did not provide any basis for further class discovery.  In the intervening 10 months since the depositions were conducted, plaintiff has taken no action to certify any class in this matter.  Thus, further class-based discovery is simply irrelevant and inappropriate at this late juncture.

Finally, defendant would oppose any certification of a class as the only issue in this case was whether the defendant conducted a "meaningful review" of Mr. Miller's file.  Thus, it is a unique set of facts as to Mr. Miller that does not lend itself to class certification.  The discovery to date, both depositions and written discovery, have demonstrated that the Wolpoff & Abramson attorneys were involved in the Miller file upon the referral and through the litigation subsequently commenced against him in state court and were meaningfully involved under any interpretation of the FDCPA.  Clearly in the absence of having shown any case against the Wolpoff & Abramson defendants predicated upon a lack of meaningful review, this does not then allow the plaintiff's counsel to spread their nets further hoping to find something to prevent the long delayed dismissal of the action.  The defendants complied fully with the Court's prior directive and counsel has put forward nothing to warrant any further burden being placed upon the defendants.

Honorable Robert M. Levy
November 15, 2004
Page 4

(6)     Defendant objects to this demand regarding the amount of revenue coming into
        W&A's attorney escrow accounts as it is being raised for the first time in the
        November 10, 2004 letter.  Moreover, information regarding how much money
        was in Wolpoff & Abramson's escrow account is completely irrelevant to any
        "meaningful review" analysis.  This information is highly confidential as it
        involves an attorneys' trust account.  Neither of the cases cited by the plaintiff in
        its letter support the proposition that production of an attorney's escrow account
        records is warranted in an FDCPA case.  This case is remarkably dissimilar to
        both *Boyd* and *Nielsen*.  In *Boyd*, one attorney claimed to have performed all
        review work for his entire firm.  In this case, Mr. Abramson testified that a
        significant attorney and paralegal staff are responsible for review work.  In
        *Nielsen*, the attorney did not truly handle the referral from the client.  In this case,
        the evidence is clear that W&A was assigned Mr. Miller's file for litigation
        purposes by its client and handled 100% of the legal issues for May Company
        including initiating litigation against Mr. Miller in N.Y. State Court.

(7)     Defendant has already set forth its position with respect to the redacted portions
        of the documents at issue during previous conferences before the Court.  A
        privilege log was provided and plaintiff has not demonstrated why the redacted
        portions, which relate to client communications should be produced.  Defendant's
        understanding is that the Court has upheld the defendant's assertion of privilege.
        Plaintiff's argument that they are seeking documents in "W&A's hands" does not
        address why they need to see a redacted privileged communication between
        attorney and client.

(8)     This demand is duplicative of number 5 and is discussed above.

(9)     Once again, this demand for W&A's database schematic is one that was not
        requested in the nearly 2 years that Plaintiff had for discovery.  In the deposition
        at issue, plaintiff's counsel indicated that "we might need to get a copy of that."
        Exhibit G, p. 60.  In the 10 months that have passed, plaintiff undertook no efforts
        to follow up on his passing thought during the deposition.  Even if the Court were
        to consider the request as valid, it is, at best, an overbroad request for search
        parameters related to the defendant's proprietary databases and has nothing to do
        with establishing whether there was "meaningful review" of the plaintiff's files.
        W&A's database is a proprietary database containing many trade secrets of
        W&A's legal practice.

(10)    In response to a request to compel Mr. Canter to disclose how long he spends
        reviewing collection accounts each day, Mr. Cantor provided complete and
        extensive responses during his deposition.  Mr. Cantor indicated that he could not
        provide a specific number as to how much time he spent on average reviewing
        collection accounts.  The fact that the plaintiff is unhappy with the response does
        not provide grounds to compel an additional response.

Honorable Robert M. Levy
November 15, 2004
Page 5

**(11)**   Once again, plaintiff's demand to compel W&A's process in determining how it made the decision to sue Mr. Miller is actually an improper attempt to ask follow-up questions with respect to issues that he had a full opportunity to explore in a deposition that occurred 10 months ago. As is evident from the plaintiff's refusal to provide any additional pages of the transcript, plaintiff asked a question, had no follow-up questions to the answer given during the deposition and now, apparently after months of reflection, seeks to obtain a further response under the guise of a motion to compel.

**(12)**   The Court is respectfully referred to response 5 above regarding the number of collection letters sent by W&A in the year 2000-2001. Once again, plaintiff's counsel are not satisfied with the response they received. A complete answer was afforded in compliance with the Court's directive and all questions were answered at the deposition consistent with the Court's ruling. As was the situation with item 5 above, counsel has not explained why the prior answers were deficient. Rather, they just want more with the hope that they may stumble across something. That standard has never been the rationale for discovery and nothing has been shown to alter that position now.

As the Court noted in its minute entries during a status conference on February 25, 2004, all fact discovery was complete with the exception of the limited "documents that are subject of anticipated plaintiff's motion to compel." Plaintiff's motion to compel, seeking documents never before sought, clearly goes beyond the scope of anticipated by the Court in its February 25, 2004 directive. Additionally, Plaintiff's failure to provide a copy of the deposition transcript as required by Court Rules is highly prejudicial to Defendant.

Accordingly, defendant opposes the motion to compel in its entirety and requests an Order from the Court directing that all disclosure in this case be deemed complete.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Thomas A. Leghorn

cc:   Brian L. Bromberg, Esq. (via Facsimile)
      Christopher V. Langone, Esq. (via Facsimile)