UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ARTHUR MILLER,

                       Plaintiff,                  **MEMORANDUM & ORDER**
                                                01 CV 1126 (RJD) (RJL)

     -against-

WOLPOFF & ABRAMSON, L.L.P., and
UPTON COHEN & SLAMOWITZ,

                      Defendants.
-----------------------------------------------------X
DEARIE, District Judge.

       Plaintiff Arthur Miller brought this action against three defendants, law firms Wolpoff &
Abramson, L.L.P. ("W&A") and Upton, Cohen, and Slamowitz ("UCS") and the National
Attorney Network ("NAN"), a nonprofit referral network created to coordinate debt collection
efforts. Plaintiff claimed that defendants had: (1) sent debt collection letters purporting to be
from attorneys without any meaningful attorney involvement, in violation of the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (2) attempted to collect attorneys'
fees that were to be shared improperly between defendant law firms and the NAN, in violation of
state ethics rules; and (3) sent debt collection letters that would confuse the "least sophisticated
consumer," in further violation of the FDCPA. On November 9, 2001, the district court (Raggi,
J.) granted defendants' motion for summary judgment on all claims. On appeal, the Second
Circuit (Sotomayor, J.) affirmed the judgment of the district court with respect to the allegations
of improper fee-sharing and confusing statements, but held that the district court's grant of
summary judgment with respect to the plaintiff's "meaningful attorney involvement" claims
against W&A and UCS, in advance of any discovery, was premature. Accordingly, it remanded

for further proceedings.  Following discovery, plaintiff and defendant W&A entered into a

consent judgment whose substance was that W&A had not violated the FDCPA in handling his

account.  Thus only one of plaintiff's claims remained:  that defendant UCS had violated 15

U.S.C. § 1692e(3) by sending debt collection letters purporting to be from an attorney without

meaningful attorney involvement.  Defendant UCS now renews its motion pursuant to Rule 56 for

summary judgment on the remaining claim.

## BACKGROUND

### A.    Factual Background

Plaintiff made purchases using a credit card issued by department store Lord & Taylor, and

later refused to pay a debt arising from those purchases.  On February 25, 2000, defendant W&A

wrote plaintiff a letter advising him that it represented Lord & Taylor and seeking repayment of

his debt.  After sending additional letters on April 24, 2000 and May 31, 2000, W&A determined

that a lawsuit against plaintiff was warranted.  Because its attorneys were not admitted to practice

in New York, W&A referred the case to defendant UCS.

On July 18, 2000, defendant UCS sent plaintiff a letter, hand-signed by UCS attorney

Mitchell Slamowitz, in which it sought payment of $1,676.69.  The letter stated, in pertinent part:

"Please be advised that we are the attorneys for [Lord & Taylor].  The above referenced account

has been forwarded to us for collection.  Please contact this office to arrange for payment."  Mem.

in Supp. of Def.'s Mot. for Summ. J., ex. A at 48.

On August 25, 2000, UCS filed a collection action against plaintiff in Queens County

Court seeking recovery of $1,618.14 and attorneys' fees of $323.63.  On July 25, 2001, in order to

2

extinguish his debt and settle the lawsuit, plaintiff paid Lord & Taylor $1,200.

**B.      Prior Proceedings**

On February 23, 2001, plaintiff filed suit against W&A, UCS, and the NAN.  As noted above, plaintiff claimed that defendants had:  (1) sent debt collection letters which purported to be from attorneys but reflected no meaningful attorney involvement, in violation of 15 U.S.C. § 1692e(3); (2) attempted to collect attorneys' fees that were to be shared between defendant law firms and the NAN, in violation of state ethics rules; and (3) sent debt collection letters likely to confuse the "least sophisticated consumer," in violation of 15 U.S.C. § 1692e.  Miller v. Wolpoff & Abramson, 321 F.3d 292, 298 (2d Cir. 2003).  On November 9, 2001, before any discovery took place, the district court (Raggi, J.) granted defendants' motion for summary judgment on all claims.  Id. at 299.

In dismissing plaintiff's Section 1692e(3) claim, the district court relied on affidavits purporting to describe the process by which attorneys at W&A and UCS had reviewed plaintiff's file prior to engaging in debt collection efforts.  Id.  In one such affidavit, W&A attorney Ronald Abramson declared:  "I was the partner who personally reviewed our client's file on [plaintiff] after it[]s referral to W&A.  No collection activity can take place until a partner reviews our client's file and exercises his or her independent professional judgment that collection is appropriate."  Id. at 305.  Abramson's affidavit also indicated that plaintiff's file, as conveyed to him by Lord & Taylor, contained the following information:

> [P]laintiff's name, social security number, current address and home and work phone numbers, the account number, the date the account was opened, the date of the last charge on the account, the date the account was charged off and the

3

> account balance, as well as "a synopsis of [Lord & Taylor's] recent customer
> service notes regarding their efforts to resolve Mr. Miller's account . . . ."

Id. at 304 n.3. Another affidavit offered the statement of Mitchell Slamowitz, the UCS partner

who had signed the July 18, 2000 letter to plaintiff. Slamowitz indicated that prior to sending the

letter, he had reviewed the following information: "Mr. Miller's full name, social security

number, current address, telephone number, the Lord & Taylor account number, the amount of the

debt, and a notation that Mr. Miller was an attorney . . . ." Id. at 305.

On appeal, the Second Circuit affirmed the grant of summary judgment with respect to

plaintiff's claims of improper fee-sharing and confusing language. Id. at 311. But it reversed as

premature the grant of summary judgment with respect to his claim that defendants W&A and

UCS had sent him debt collection letters that did not reflect meaningful attorney involvement, and

it remanded for discovery on that issue. Id. Defendants' affidavits, the court said, did not permit

the conclusion as a matter of law that defendants' review of plaintiff's case had satisfied Section

1692e(3), particularly in light of plaintiff's claim that defendants processed large numbers of

claims in a short time:

> [I]f discovery in this case were to reveal that W&A and UC&S handled this high
> volume of accounts, received only the limited information described in the attorney
> affidavits, reviewed the collection files with such speed that no independent
> judgment could be found to have been exercised, and then issued form collection
> letters with the push of a button, a reasonable jury could conclude that W&A and
> UC&S lacked sufficient professional involvement with plaintiff's file that the
> letters could be said to be from an attorney.

Id. at 306. At the same time, the court suggested facts under which summary judgment for

defendants would be warranted: "If, on the other hand, it becomes clear after discovery that

W&A and UC&S do indeed review information reasonably calculated to permit them to make the

kind of determinations Abramson claims to have made before sending the collection letters, the letters would be in compliance with the FDCPA." Id.

Discovery followed, including depositions of plaintiff, Abramson, Slamowitz, and others. Subsequently, plaintiff and defendant W&A signed a consent judgment whose substance was that W&A had not violated the FDCPA with respect to plaintiff. Plaintiff maintained his action against defendant UCS, which now renews its motion for summary judgment.

## DISCUSSION

As noted above, the gravamen of plaintiff's remaining claim is that defendant UCS violated 15 U.S.C. § 1692e(3) by failing to conduct a meaningful attorney review of his case before mailing him a debt collection letter that purported to be from an attorney. In requesting summary judgment, UCS advances two arguments. First, UCS cites plaintiff's acknowledgment, in the consent judgment signed by plaintiff and defendant W&A, that W&A's review of his case was legally sufficient. UCS contends that because it relied on W&A's review in conducting its own efforts to collect on plaintiff's debt, the fact that plaintiff signed the consent judgment precludes him from maintaining this action. Second, and in the alternative, UCS argues that its own review of plaintiff's case was sufficient to satisfy Section 1692e(3).

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Cadrett, 477 U.S. 317, 322

(1986).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should

summary judgment be granted." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

Moreover, "the inferences to be drawn from the underlying affidavits, exhibits, interrogatory

answers, and depositions must be viewed in the light most favorable to the party opposing the

motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).


**B.     Section 1692e**

The FDCPA reflects the intent of Congress "to eliminate abusive debt collection practices

by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to

protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Section 1692e bars debt

collectors from using "any false, deceptive, or misleading representation or means in connection

with the collection of any debt." Id.  It offers a nonexclusive list of impermissible practices,

including "[t]he false representation or implication that any individual is an attorney or that any

communication is from an attorney." 15 U.S.C. § 1692e(3).

In the Second Circuit, the leading case interpreting Section 1692e is Clomon v. Jackson,

988 F.2d 1314 (2d Cir. 1993).  Under Clomon, courts evaluating whether a particular practice

violates Section 1692e must apply an objective standard, asking whether that practice would

deceive the "least sophisticated consumer." Id. at 1318.  The goal is "to protect 'the naive' from

abusive practices, while simultaneously shielding debt collectors from liability for 'bizarre or

idiosyncratic interpretations' of debt collection letters." Greco v. Trauner, Cohen & Thomas, 412

F.3d 360 (2d Cir. 2005) (quoting Clomon, 988 F.2d at 1320).

Even a debt collection letter that is literally "from an attorney" may violate Section 1692e(3) if it appears likely to deceive consumers through "overstatement of the degree of [that] attorney's involvement in individual debtors' cases . . . ." Clomon, 988 F.2d at 1319.  See also Boyd v. Wexler, 275 F.3d 642, 644 (7th Cir. 2001) ("A lawyer who merely rents his letterhead to a collection agency violates the [FDCPA].").

Clomon also declares that "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent." 988 F.2d at 1321. Thus in order not to violate Section 1692e(3) a debt collection letter that appears over a lawyer's signature must reflect "meaningful attorney involvement." Miller, 321 F.3d at 305.

The meaningful involvement requirement may be relaxed where a debt collection letter is signed by an attorney but includes a disclaimer about the extent to which attorneys are involved in reviewing individual debtors' cases. Greco, 412 F.3d at 364-65.  See also Pujol v. Universal Fidelity Corp., No. 03 CV 5524, 2004 U.S. Dist. LEXIS 10556, at *17-18 (E.D.N.Y. June 9, 2004) (summary judgment for defendants where letter contained disclaimer).  But see Sparkman v. Zwicker & Associates, 374 F. Supp. 2d 293, 302 (E.D.N.Y. 2005) (summary judgment for plaintiff where disclaimer was "discursive and confusing").

Elsewhere, however, an attorney who signs a debt collection letter must have some basis for believing that the individual to whom the letter is addressed owes a debt to his client, and that the debt is overdue.  "[M]erely being told by a client that a debt is overdue is not enough." Miller, 321 F.3d at 304.

7

C.      **Defendant's Reliance on W&A's Review**

As noted above, defendant's first argument for summary judgment is that because plaintiff has acknowledged the legal sufficiency of W&A's review of his file, and because UCS was entitled to (and did) rely on W&A's review, plaintiff cannot maintain his action against UCS.  In support of this argument, defendant describes W&A's review process. Def.'s Mem. in Supp. of Mot. for Summ. J. at 9-12.  It points out that plaintiff signed a consent judgment declaring that "after extensive discovery, no violations of the Fair Debt Collection Practices Act were found in the handling of his account by the firm of Wolpoff & Abramson L.L.P." Id. at 5.  And it claims to have relied on W&A's review of plaintiff's case in initiating its own debt collection efforts against him.  Id. at 9.

In response, plaintiff does not argue that W&A's review of his file was insufficient.  Nor does he dispute that UCS relied on W&A's review in conducting its own debt collection efforts, or even that plaintiff was entitled, in principle, to do so.  Instead, plaintiff contends that defendant's reliance on W&A was unreasonable.  Proceeding from the unsupported proposition that "[r]easonable reliance on the recommendations of another party requires some further investigation of the policies and procedures employed by that party," he contends that defendant's reliance on W&A was unreasonable because "[d]efendant has not produced any evidence that it undertook any further investigation of W&A's policies and procedures." Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 18.

For the reasons explained below, the Court finds that defendant was entitled to reasonable reliance on W&A's review of plaintiff's file, and that reasonable reliance, in this case, would have required that UCS have some knowledge of the procedures W&A followed in conducting its

review.  The Court finds further that the facts before it do not require the conclusion, as a matter

of law, that UCS had sufficient knowledge of W&A's procedures to render its reliance on W&A

reasonable.  The Court therefore declines to grant summary judgment on the basis of defendant's

reliance on W&A.

       To support the proposition that it was entitled to rely on W&A, defendant cites a single

case, in which another district court of this circuit declared that "[a]n attorney may 'approve the

sending of particular letters based upon the recommendations of others' and still comply with §

1692e(3)."  Goins v. Brandon, 367 F. Supp. 2d 240, 244 (D. Conn. 2005) (quoting Clomon, 988

F.2d at 1320) (citing Boyd, 275 F.3d at 647 (holding that the FDCPA does not forbid "delegation

of part of the review process to a paralegal or even to a computer program")).  Defendant also

claims that the Second Circuit has "acknowledged that UCS could rely on the acts of W&A . . . ."

Def.'s Mem. in Supp. of Mot. for Summ. J. at 9.  It reaches this conclusion based on the Second

Circuit's statement that "[i]f . . . it becomes clear after discovery that W&A and UC&S do indeed

review information reasonably calculated to permit them to make *the kind of determinations*

*[Ronald] Abramson claims to have made before sending the collection letters*, the letters would

be in compliance with the FDCPA."  Id. (quoting Miller, 321 F.3d at 306) (emphasis added in

defendant's submission).

       Neither Goins nor Miller settles the question whether defendant was entitled to rely on

W&A's review.  But attorneys sending debt collection letters are entitled to rely, at least to some

degree, on the judgments of others.  Another court of this circuit, having granted summary

judgment for the defendants in a Section 1692e(3) action where the signing attorney's

involvement in the debtor's case was "personal and substantial," observed: "Nor is this

conclusion undermined by the fact that the in-depth review of the [cases], following the initial

scan of all of them by [the attorney], [is] divided between her and two paralegals.  The review

required here is relatively uncomplicated and hardly requires legal training." Mizrahi v. Network

Recovery Services, Inc., No. 98-CV-4528, 1999 U.S. Dist. LEXIS 22145, at *12-13 (E.D.N.Y.

Nov. 5, 1999).  Indeed, the court in Mizrahi suggested that "this [was] the kind of case in which

an attorney could reasonably rely on the information supplied by the *client*, without any in-depth

review."  Id. at *13 (emphasis added).  It analogized to cases in which attorneys had defeated

motions for Rule 11 sanctions despite having relied on their clients' factual representations:

"[A]n attorney is entitled to rely on the objectively reasonable representation of the client."  Id.

(quoting Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329-30 (2d Cir. 1995)).

     Still, as Goins makes clear, the ultimate determination whether to send a debt collection

letter is nondelegable.  An attorney who signs such a letter must exercise "the ultimate

professional judgment concerning the existence of a valid debt."  Goins, 367 F. Supp. 2d at 244

(quoting Boyd, 275 F.3d at 648).  In Goins, where the signing attorney had not been involved in

the debtor's case, but relied exclusively on the judgment of another attorney in his office, the court

granted summary judgment for the plaintiff.  Id. at 245 ("[R]eview by another is insufficient to

establish any question of fact regarding [defendant attorney's] liability, as the attorney who signed

the debt collection letter, under § 1692e(3).").  See also Avila v. Rubin, 84 F.3d 222, 229 (7th Cir.

1996) (rejecting defendant's claim that a grant of summary judgment for plaintiff would

"effectively condemn the use of paralegals and assistants in a law office.").

     Notwithstanding the holding of Hadges, cited in Mizrahi, that attorneys may rely on their

clients' "objectively reasonable representations," the cases interpreting Rule 11 confirm that

attorneys may not *entirely* delegate to anyone, including co-counsel, their duty to inquire into the facts of a case.  See, e.g., Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville, 937 F.2d 1110, 1117 (6th Cir. 1991) ("[Parties] imply that, if local counsel relied on material submitted by the outside counsel who was actually litigating the case, local counsel should not be held liable for Rule 11 sanctions.  This contention is not consistent either with the language of Rule 11 or applicable Supreme Court precedent."); Unioil, Inc. v. Heck Oil, Inc., 809 F.2d 548, 558 (9th Cir. 1986) ("An attorney who signs [a] pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry."); In re Frontier Ins. Group, Inc., 172 F.R.D. 31, 46 (E.D.N.Y. 1997) ("[A] signing attorney cannot delegate his or her responsibility to another attorney to investigate the facts underlying the complaint.").

In Garr v. U.S. Healthcare, Inc., the Third Circuit rejected the argument that the need for an attorney to review the merits of his client's case was obviated by another attorney's prior review, declaring:  "We recognize that it could be argued that it would have been pointless for [attorneys] to make an inquiry into the merits of the case sufficient to satisfy Rule 11 as [another attorney] already had done so.  Yet Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry *personally*."  22 F.3d 1274, 1280 (3d Cir. 1994) (emphasis added). The court offered a rationale for duplicative review:  "The advantage of duplicate personal inquiries is manifest:  while one attorney might find a complaint well founded in fact and warranted by the law, another, even after examining the materials available to the first attorney, could come to a contrary conclusion."  Id.

Together, the cases interpreting the FDCPA and Rule 11 indicate that an attorney may rely to some extent on another party, whether a client, a paralegal, or another attorney, in deciding

whether to send a debt collection letter and still not violate Section 1692e(3)—but also that the attorney may not simply substitute the judgment of that other party for his or her own.  The attorney's reliance on the other party must be reasonable on the basis of other facts, for example, familiarity with the other party's past reliability or current practices.  Significantly, it is not sufficient to claim, after the fact, that the other party's procedures were adequate, or that they reached the correct result.  Cf. Garr, 22 F.3d at 1279 ("[A] signer making an inadequate inquiry into the sufficiency of the facts and law underlying a document will not be saved from a Rule 11 sanction by the stroke of luck that the document happened to be justified. . . . 'A shot in the dark is a sanctionable event, even if it somehow hits the mark.'") (quoting Vista Mfg., Inc. v. Trac-4 Inc., 131 F.R.D. 134, 138 (N.D. Ind. 1990)).  It must be shown, as well, that the attorney who relied on those procedures was aware of them at the time.

Defendant claims to have been "well-aware of W&A's operations before acting on the plaintiff's debt."  Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 2.  As evidence, it cites the following testimony of attorney Slamowitz, signer of the July 18, 2000 debt collection letter sent to plaintiff:

> [Lord & Taylor] has always been a very good client, a very thorough client.  And they have had, over the years, a substantial relationship with the Wolpoff & Abramson firm to the point where Wolpoff & Abramson, I know, has gone down there and covered their procedures, etc.  Wolpoff & Abramson is a very thorough firm and they took the account, they—I know an attorney reviews their accounts, a paralegal reviews their accounts, and they determine also as did [Lord & Taylor] that this is a case to be litigated, to be sued.

Id. at 2-3.  But this testimony indicates only that at the time he was deposed, Slamowitz knew that W&A was "a very thorough firm"; that it had "gone down there and covered" its client's "procedures, etc."; and that an attorney and/or a paralegal had reviewed plaintiff's file and

determined that a lawsuit was appropriate.  Although Slamowitz knew W&A was "thorough," he does not claim to have known anything about the process by which it reviewed plaintiff's case, other than that it involved an attorney and/or a paralegal.  Nor does Slamowitz claim any specific knowledge of the manner in which W&A "covered" Lord & Taylor's "procedures."  Finally, his testimony does not indicate what, if anything, he knew about W&A's procedures, or its handling of plaintiff's file, on the day he signed the letter to plaintiff.

Defendant cites no other evidence to indicate that its reliance on W&A was reasonable, other than the undisputed fact that it was W&A's "affiliate counsel," and received the case only because W&A was not authorized to practice law in New York.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 8.  Defendant does allege, in support of its contention that its own review of plaintiff's case was legally sufficient, that it "maintained a co-counsel relationship after W&A referred the matter to UCS," Id. at 13, citing Ex. D at 11-12.  But defendant does not claim that it ever made any inquiries of W&A in connection with plaintiff's case.  Moreover, the testimony it cites, that of W&A attorney Ronald Abramson, indicates only that W&A understood UCS to have discretion to refuse to pursue the case, if its own review found the facts not to warrant suit—not that there was any dialogue between UCS and W&A about the case.

In sum, although defendant was entitled to rely to some degree on W&A's review of plaintiff's case in sending the July 18, 2000 debt collection letter to plaintiff, it has not adduced facts sufficient to require the finding, as a matter of law, that its reliance in this case was reasonably based on familiarity with W&A's review process.  Attorney Slamowitz's testimony indicates that his familiarity with W&A's process was vague, at best.  Even if this Court were to hold—which it need not—that W&A's review of plaintiff's file complied with Section 1692e(3),

13

such a holding would not require the conclusion that UCS, too, had complied with the statute. Summary judgment on this ground therefore is inappropriate.

**D.      Defendant's Own Review**

Defendant's second argument for summary judgment is that even if it was not entitled to rely on W&A's review of plaintiff's case, its own review was sufficient to satisfy Section 1692e(3). Defendant suggests two bases for its determination to proceed against plaintiff on its client's behalf: (1) its own "level of familiarity with Lord & Taylor's contracts and practices," and (2) "the efforts undertaken by UCS to investigate plaintiff's debt." Def.'s Mem. in Supp. of Mot. for Summ. J. at 13.

Plaintiff, in response, claims that defendant "still has not proven that its attorneys conducted a meaningful attorney review before the firm began debt collection efforts" against him. Pl.'s Opp'n to Mot. for Summ. J. at 1. Its claim rests on three allegations: (1) that the facts about defendant's review are nearly identical to those before the Second Circuit when it denied the previous motion for summary judgment; (2) that defendant's electronic filing system demonstrates that no UCS attorney reviewed plaintiff's file prior to defendant's sending its initial letter to plaintiff; and (3) that defendant handled a sufficiently high volume of cases as to make a grant of summary judgment inappropriate. Id. at 1-2.

Neither the facts about defendant's familiarity with its client, nor those about the procedure it followed prior to sending the July 18, 2000 debt collection letter to plaintiff, preclude the possibility that a reasonable jury could find that it failed to satisfy Section 1692e(3)'s requirement for meaningful attorney involvement. Accordingly, the Court does not find, as a

14

matter of law, that defendant's own review of plaintiff's case was legally sufficient, and it declines to grant summary judgment on the basis of this review.

As noted above, an attorney who signs a debt collection letter cannot rely on the client's bare claim that a debt exists and is overdue. Miller, 321 F.3d at 304. But the Second Circuit has declined to define the minimum level of review required under Section 1692e(3). Id. Other courts, too, have declined to set minimum standards. See, e.g., Boyd, 275 F.3d at 647 ("We need not determine in this case the minimum amount of lawyer review required to avoid misleading the debtor into thinking that a lawyer has made a responsible professional judgment about the existence of a legally enforceable debt. No reported decisions address that issue and it may not have to be resolved in this case."). However, the cases interpreting Section 1692e(3) suggest several factual considerations that are likely to be relevant: (1) the process followed by the attorney who signed the letter; (2) the information that attorney possessed about the circumstances of the individual debtor to whom the letter was addressed; (3) the form and substance of the letter itself; (4) the volume of cases handled by the attorney or firm; and (5) the attorney's basis for crediting any information about the case that the client provided.

An initial factual determination, where a letter signed by an attorney is challenged under Section 1692e(3), is the process the attorney followed in preparing the letter. In Clomon, the court granted summary judgment for the plaintiff where the attorney whose signature appeared on the challenged letter "played virtually no day-to-day role in the debt collection process." 988 F.2d at 1320. The court suggested several steps the attorney might have taken, but did not: "[He] did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendations of others; and he

15

did not see particular letters before they were sent . . . ." Id. See also Goins, 367 F. Supp. 2d at 245 (granting summary judgment for plaintiff based on defendant attorney's "complete lack of personal involvement in the decision to send a letter"); Mizrahi, 1999 U.S. Dist. LEXIS 22145, at *4-5, *23 (granting summary judgment for defendants where attorney's initial review of each debtor's case consumed two to four hours).

Also important is the amount and type of information available to the attorney who decided to sign the challenged letter. This issue was at the heart of the Second Circuit's 2003 ruling in this case. Miller, 321 F.3d 292. It also arose in Clomon, where the court relied in part on the fact that the attorney "did not even know the identities of the persons to whom the letters were issued." 988 F.2d at 1320. Not that knowing the debtor's name would have been enough; the court indicated that the attorney must have possessed enough information to "form[] an opinion about how to manage the case . . . ." Id. at 1321.

The form and substance of the letter itself are relevant, as well. In Clomon, the court noted that the "mass-produced" nature of the challenged letter cast doubt on whether its signer had complied with the statute. Id. While not declaring that all mass-produced letters violated the statute, the court declared that "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e." Id. See also Reade-Alvarez v. Eltman, Eltman, & Cooper, 369 F. Supp. 2d 353, 360-62 (E.D.N.Y. 2005) (denying defendants' motion to dismiss where letters to debtors appeared computer generated and mass-produced and included only a typed signature); Goins, 367 F. Supp. 2d at 245 (mass-produced debt collection letters less likely to comply with Section 1692e); Young v. Citicorp Retail Servs., Inc., No. 3:95cv1504, 1997 U.S. Dist. LEXIS 22669, at

*12 (D. Conn. May 20, 1997) (same).

Along similar lines, some courts have considered, as circumstantial evidence, the volume of cases a law firm handled.  See, e.g., Miller, 321 F.3d at 306-07 (large volume of accounts handled by W&A was relevant to a determination whether W&A had violated Section 1692e(3)); Boyd, 275 F.3d at 645-46 (large volume of cases handled by defendant law firm was circumstantial evidence of a Section 1692e(3) violation).

Finally, although Miller makes clear that an attorney may not rely *entirely* on his client's assertions about the circumstances of an individual debtor, it also suggests that where an attorney has reason to believe that the client is providing reliable information, some degree of reliance is permissible.  Declining plaintiff's invitation to require that attorneys review "a copy of the contract, a credit report, and a full payment history or statement of account," the Second Circuit in Miller observed that "there may be circumstances where, following discovery, it becomes clear that the attorney's familiarity with the client's contracts and practices would negate the need to review some if not all of the documents plaintiff seeks to require."  321 F.3d at 304.

In claiming that its own review of plaintiff's case satisfied Section 1692e(3), defendant contends first that it relied reasonably on the information supplied to it by its client.  It alleges that it had represented Lord & Taylor previously, had received "very accurate" information from Lord & Taylor, and had on file a copy of the credit agreement between Lord & Taylor and plaintiff. Def.'s Mem. in Supp. of Mot. for Summ. J. at 13.  It cites the testimony of attorney Slamowitz that in preparing the July 18, 2000 debt collection letter sent to plaintiff, he relied on information provided by his client.  Id. at 14.  Defendant also cites the Second Circuit's observation that "there may be some circumstances where . . . the attorney's familiarity with the client's contracts and

practices would negate the need to review some if not all of the documents plaintiff seeks to require." Id. at 4 (quoting Miller, 321 F.3d at 304).

It does appear that, in sending the July 18, 2000 letter to plaintiff, attorney Slamowitz relied on his client. When asked whether he reviewed signed credit card receipts prior to signing a debt collection letter, Slamowitz answered: "I rely on my client." Id., Ex. G at 125. When asked whether he checked the balance on a debtor's account, he responded: "I trust what I get from my client. I rely on the information that they provide to me." Id., Ex. G at 210. Slamowitz also stated that he had particular confidence in Lord & Taylor, which he described as "a very distinguished, very good client." Id., Ex. G at 125. He explained: "[T]he information they have provided to us has always been very accurate." Id., Ex. G at 138.

But Slamowitz's reliance on his client does not appear to have been based on knowledge of the client's "contracts and practices." When asked "[w]hat have you done personally to review [Lord & Taylor's] procedures on forwarding accounts?" Slamowitz answered, "I personally have done nothing." Id., Ex. G at 137. Likewise, when asked "do you know how [Lord & Taylor] calculate[s] what's due and owing?" Slamowitz replied, "I don't know their procedures." Id., Ex. G at 140. To some extent, Slamowitz may have relied on David Cohen, another UCS partner, whose due diligence responsibilities included being aware of Lord & Taylor's billing practices, id., Ex. H at 176, and reviewing the underlying credit card agreement, id. at 14. But this kind of "double reliance"—Slamowitz's opinion of his case was his client's, and his opinion of his client was his partner's—is insufficient, as a matter of law, to justify the relaxed review standard contemplated in Miller.

As additional support for the claim that its own review of plaintiff's file satisfied Section

18

1692e(3), UCS offers an account of the process its attorneys followed in reviewing plaintiff's

case. Def.'s Mem. in Supp. of Mot. for Summ. J. at 14-15.  It notes that attorney Slamowitz

reviewed the following information before signing the letter to plaintiff: "the plaintiff's name,

address, phone number, and social security [number] as well as the name of the creditor, [Lord &

Taylor], the balance owed by the Plaintiff to [Lord & Taylor], the date the interest on the debt

started to accrue and the interest owed."  Id. at 14.  Plaintiff counters that Slamowitz did not

review, inter alia, an affidavit of fact from Lord & Taylor, copies of monthly statements, or copies

of the correspondence between Lord & Taylor and the plaintiff.  Pl.'s Opp'n to Mot. for Summ. J.

at 5.  Defendant seeks to distinguish its own case from Clomon, where the attorney "played

virtually no day-to-day role" in the preparation of debt collection letters.  Def.'s Mem. in Supp. of

Mot. for Summ. J. at 6-8 (quoting Clomon, 988 F.2d at 1320).  It contends that "[t]here can be no

comparison [between] the minimal level of attorney involvement in Clomon and [the]

overwhelming amount of attorney involvement by UCS in the case at bar."  Id. at 15.

        However, Slamowitz's review of the facts available to him appears to have been largely

ministerial.  See Nielsen v. Dickerson, 307 F.3d 623, 636-37 (7th Cir. 2002) (ministerial review of

debtor's file did not satisfy Section 1692e(3)).  With regard to the debtor's balance, as noted

above, Slamowitz testified that he relied on his client.  Def.'s Mem. in Supp. of Mot. for Summ.

J., Ex. G at 210.  And with regard to the debtor's name, address, and social security number,

Slamowitz testified: "I just look and make sure that it appears legitimate on its face."  Id., Ex. G

at 209.  Moreover, as plaintiff points out, this description of Slamowitz's process is "nearly

identical" to that before the Second Circuit when it denied defendant's earlier summary judgment

motion.  Pl.'s Reply Mem. in Opp'n to Mot. for Summ. J. at 1.  There, the court had before it the

19

Slamowitz affidavit, which claimed that Slamowitz had reviewed "Mr. Miller's full name, social security number, current address, telephone number, the Lord & Taylor account number, the amount of the debt, and a notation that Mr. Miller was an attorney." 321 F.3d at 305. This evidence, the Second Circuit held, was "insufficient to support the conclusion as a matter of law that any professional judgment was exercised before UC&S sent its collection letter." Id. The Court sees very little difference between the review described by the Second Circuit as "insufficient" and that described by the defendants as "overwhelming."

Moreover, as plaintiff observes, the volume of cases handled by defendant, while not sufficient to prove a Section 1692e(3) violation, militates against summary judgment. Referring to July 18, 2000, the date of defendant's initial letter to plaintiff, plaintiff claims that attorney Slamowitz appeared to have "performed an adequate attorney review of over 341 separate accounts in a single day." Pl.'s Reply Mem. in Opp'n to Mot. for Summ. J. at 6. As defendant observes, there is reason to doubt plaintiff's characterization of the facts. Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 9. Defendant's answers to plaintiff's interrogatory indicate only that UCS attorneys sent 211 initial demand letters on that day, and signed 130 complaints on a different day. Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. J at ¶ 11. Moreover, Slamowitz testified that he and attorney Cohen, together, *signed* the letters that went out that day. Id., Ex. G at 96. His testimony does not indicate that he handled all 211 cases himself; nor does it indicate that he performed *reviews* of all 211 cases on that day. Still, discovery did reveal that during the month of July 2000, UCS sent initial demand letters to 3,284 debtors. Id., Ex. J at ¶ 11. It revealed, as well, that while Slamowitz and Cohen do not handle all UCS's cases themselves, during the period in question, UCS was a small firm, employing nine attorneys and eighteen

20

paralegals. Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 9. While these facts do not place UCS in the same league as W&A, which the Miller court described as taking in over 55,000 accounts each *month*, 321 F. 3d at 306, it raises doubts about defendant's claim to have conducted a careful review of plaintiff's file.

Finally, the Court acknowledges plaintiff's claim that records generated by defendant's "CLS system," a computer program facilitating "paperless" file management, show that no UCS attorney reviewed plaintiff's file before UCS commenced debt collection efforts against him, Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 6-14, and defendant's objection that these records prove no such thing, since its system permits attorneys to log in and review files without creating a record of their having done so, Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 5-8. Although the CLS system and its records appear to have sparked some controversy during discovery proceedings before Judge Levy, see Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 7, the system appears to have contributed no evidence that will help the Court dispose of this motion. There are no undisputed facts regarding the CLS system before the Court. See generally Def.'s Statement of Undisputed Material Facts. Moreover, this Court's view of the CLS system evidence is that while it does not demonstrate that Slamowitz reviewed plaintiff's file prior to sending his initial letter, neither does it demonstrate conclusively that he did *not* do so.

In sum, defendant's account of its own review of plaintiff's case, prior to the July 18, 2000 debt collection letter, does not require the conclusion, as a matter of law, that its review was sufficient to satisfy the Section 1692e(3) requirement for meaningful attorney involvement. Defendant has not adduced facts showing that attorney Slamowitz, who signed the letter, was sufficiently familiar with his client's contracts and practices to justify his reliance on the client's

assessment of plaintiff's case.  Meanwhile, defendant's account of the process attorney Slamowitz

followed in conducting his own review of plaintiff's case does not differ significantly from the

record that was before the Second Circuit when it denied defendant's earlier summary judgment

motion.  In addition, while not sufficient to prove a violation of Section 1692e(3), the volume of

cases handled by defendant during the relevant time period suggests that the Court should exercise

particular caution in considering defendant's present motion.  Accordingly, the Court declines to

grant summary judgment on the basis of defendant's review of plaintiff's case.


**E.      Conclusion**

As explained above, the Court finds that although defendant UCS was entitled to

reasonable reliance on defendant W&A with regard to defendant's individual circumstances, it has

not adduced facts sufficient to require the conclusion, as a matter of law, that its reliance on W&A

in this instance was reasonable, and therefore permissible under Section 1692e(3).  The Court

likewise finds that neither defendant's account of its familiarity with its client, nor its description

of the process it followed in reviewing plaintiff's case, constitute facts sufficient to require the

conclusion that its own review of plaintiff's case was sufficient to satisfy Section 1692e(3).

Accordingly, the Court denies defendant's motion for summary judgment.


SO ORDERED.
Dated: Brooklyn, New York
       January 25, 2007                              s/ Judge Raymond J. Dearie

                                                     RAYMOND J. DEARIE
                                                     United States District Judge


22